UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| L.R., | Case No. 5:20-cv-00731-SHK |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff L.R.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying her application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

# I.    BACKGROUND

Plaintiff filed an application for DIB on April 26, 2016, alleging disability beginning on September 1, 2014.  Transcript ("Tr.") 10, 173-74.[2]  Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on January 18, 2019, ALJ Paul Isherwood determined that Plaintiff was not disabled.  Tr. 10-22.  Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on February 20, 2020.  Tr. 1-6.  This appeal followed.

# II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'"  Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted).  A reviewing

---

[2] A certified copy of the Administrative Record was filed on September 17, 2020.  Electronic Case Filing Number ("ECF No.") 19.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." <u>Stout v. Comm'r Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009).

### III.   DISCUSSION

#### A.   <u>Establishing Disability Under The Act</u>

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

<u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" <u>Id.</u>

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." <u>Tackett</u>, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

one through four, and the Commissioner carries the burden of proof at step five. <u>Tackett</u>, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. <u>See</u> 20 C.F.R. § 404.1520(b).

> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. <u>See</u> 20 C.F.R. § 404.1520(c).

> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. <u>See</u> 20 C.F.R. § 404.1520(d).

> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. <u>See</u> 20 C.F.R. § 404.1520(e).

1    Step 5.  Is the claimant able to do any other work?  If not, then
2    the claimant is "disabled" and therefore entitled to [DIB].  <u>See</u> 20
3    C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then
4    the Commissioner must establish that there are a significant number of
5    jobs in the national economy that claimant can do.  There are two ways
6    for the Commissioner to meet the burden of showing that there is other
7    work in "significant numbers" in the national economy that claimant
8    can do: (1) by the testimony of a vocational expert [("VE")], or (2) by
9    reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404,
10   subpt. P, app. 2.  If the Commissioner meets this burden, the claimant
11   is "not disabled" and therefore not entitled to [DIB].  <u>See</u> 20 C.F.R.
12   §§ 404.1520(f), 404.1562.   If the Commissioner cannot meet this
13   burden, then the claimant is "disabled" and therefore entitled to [DIB].
14   <u>See</u> <u>id.</u>

15   <u>Id.</u> at 1098-99.

16   **B.    <u>Summary Of ALJ's Findings</u>**

17   The ALJ determined that "[Plaintiff] meets the insured status requirements
18   of the . . . Act through December 31, 2020."  Tr. 12.  The ALJ then found at step
19   one, that "[Plaintiff] engaged in [SGA] during the following periods: September 1,
20   2014-December 31, 2015 (20 CFR 404.1520(b) and 404.1571 <u>et</u> <u>seq.</u>)."  <u>Id.</u>  The
21   ALJ found, "[h]owever, [that] there has been a continuous 12-month period(s)
22   during which [Plaintiff] did not engage in [SGA].  The remaining findings address
23   the period(s) Plaintiff did not engage in [SGA]."  Tr. 13.

24   At step two, the ALJ found that "[Plaintiff] has the following severe
25   impairment: affective disorder (20 CFR 404.1520(c))."  <u>Id.</u>  At step three, the ALJ
26   found that "[Plaintiff] does not have an impairment or combination of impairments
27   that meets or medically equals the severity of one of the listed impairments in 20

28

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 14.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is able to perform simple, routine tasks. [Plaintiff] can use judgment limited to perform simple work related decisions. [Plaintiff] is frequently able to interact with supervisors and coworkers but only occasional interaction with the general public. [Plaintiff] is able to make simple work-related decisions.

Tr. 15. The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565)." Tr. 21.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on October 11, 1961 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563)." Id. The ALJ observed that "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1464)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569 and 404.1569[(]a))." Id. Specifically, the ALJ found that Plaintiff could perform the "medium, unskilled" occupations of "Cleaner II," as defined in the Dictionary of Occupational Titles ("DOT") at DOT 919.687-014, "Night Cleaner, DOT 358-

687-010," and Hospital Cleaner, DOT 323.687-010." Tr. 22.  The ALJ based his decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Id.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines." Id. (internal quotation marks omitted).  The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from September 1, 2014, through [January 18, 2019], the date of th[e] decision (20 CFR 404.1520(g))." Id.

### C.   Issues Presented

In this appeal, Plaintiff raises two issues, whether the ALJ: (1) "properly evaluated [Plaintiff's] [chronic obstructive pulmonary disease ("COPD")] and breathing limitations"; and (2) erred by rejecting Plaintiff's symptom statements. ECF No. 24, Joint Stip. at 4.

### D.   Court's Consideration Of The First Issue

#### 1.   Parties' Arguments

Plaintiff argues that "the ALJ's failure to acknowledge the complexity and severity of [her] COPD warrants reversal" because "[t]he ALJ's decision lacks the support of substantial evidence and [is] a result of legal error." Id. at 13.  Plaintiff points the Court to an extensive list of medical evidence relating to her COPD that the ALJ did not consider or discuss when the ALJ found that Plaintiff had no severe physical limitations at step two. Id. at 5-13.  The Court discusses some of this evidence below in its analysis.

Defendant responds that "[t]he ALJ properly considered the limited evidence of COPD at step two of the decision." Id. at 14.  Defendant asserts that

"the ALJ appropriately considered evidence regarding Plaintiff's COPD, noting that she had been diagnosed with COPD and asthma, which the record described as mild and uncomplicated." Id. (citations omitted). Defendant adds that "Plaintiff is unable to demonstrate that the limited evidence of her breathing conditions, which the ALJ indeed considered, caused the ALJ's decision to be unsupported by substantial evidence or based on legal error." Id. at 15. Finally, Defendant argues that "[s]ubstantial evidence supports the ALJ's decision regarding Plaintiff's COPD and asthma, it is free from legal error and the Court should affirm." Id.

## 2.    ALJ's Consideration Of Plaintiff's COPD

At step two of the sequential evaluation process, the ALJ found, in pertinent part, that Plaintiff's asthma and COPD were "non-severe impairments." Tr. 13. With respect to Plaintiff's COPD, the ALJ made no specific observations or references to Plaintiff's medical records when finding that Plaintiff's COPD was a non-severe impairment. See Tr. 10-22.

The ALJ, however, made some observations regarding another of Plaintiff's pulmonary limitations—Plaintiff's asthma—that the Court includes here. Specifically, with respect to Plaintiff's pulmonary limitations, the ALJ noted, in toto, that:

> [Plaintiff] has been diagnosed with [COPD] and asthma.  Her asthma was described as mild and uncomplicated [citing Tr. 597].  At times, [Plaintiff] reported to the emergency room for acute exacerbation of asthma [citing Tr. 285].  She used an inhaler [citing Tr. 505].  Upon examination, [Plaintiff] had no cough, dyspnea or hemoptysis [citing Tr. 483, 489].  In addition, [Plaintiff] had normal breath sounds with no rales, rhonchi, wheezes or rubs [citing Tr. 498, 592, 632].  She had normal effort and breath sounds [citing Tr. 743].  Further, [Plaintiff] was treated conservatively [citing Tr. 596].  Pulmonary function testing

1    only showed mild restriction [citing Tr. 761].  Moreover, in March 2018

2    she had a normal spirometry [citing Tr. 986].

3  Tr. 13.

4              **3.    Step Two Legal Standard**

5       An "impairment or combination of impairments" is "severe" if it

6  "significantly limits [a claimant's] physical or mental ability to do basic work

7  activities."  20 C.F.R. § 416.920(c).[3]  See also 20 C.F.R. §416.922(a) ("An

8  impairment or combination of impairments is not severe if it does not significantly

9  limit [a claimant's] physical or mental ability to do basic work activities.").  "Basic

10 [physical] work activities" include: "[p]hysical functions such as walking, standing,

11 sitting, lifting, pushing, pulling, reaching, carrying, or handling;" and "[c]apacities

12 for seeing, hearing, and speaking[.]"  20 C.F.R. § 416.922(b).

13      "'[T]he step-two inquiry is a de minimis screening device to dispose of

14 groundless claims'; at step two, an impairment 'can be found not severe only if the

15 evidence establishes a slight abnormality that has no more than a minimal effect on

16 an individual's ability to work.'"  Venezia v. Berryhill, 765 Fed. App'x. 319, 320

17 (9th Cir. 2019) (unpublished mem.) (quoting Smolen v. Chater, 80 F.3d 1273, 1290

18 (9th Cir. 1996)).

19             **4.    RFC Determination Legal Standard**

20      The RFC is the maximum a claimant can do despite her limitations.  20

21 C.F.R. § 404.1545.  In determining the RFC, the ALJ must consider limitations

22 imposed by all of a claimant's impairments, even those that are not severe, and

23 evaluate all of the relevant medical and other evidence, including the claimant's

24 testimony.  SSR 96-8p, available at 1996 WL 374184.  The ALJ is responsible for

25 resolving conflicts in the medical testimony and translating the claimant's

26 impairments into concrete functional limitations in the RFC.  Stubbs-Danielson v.

27

28 [3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 404.1520 et seq., when analyzing whether the ALJ erred at step two.

1   Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  Only limitations supported by

2   substantial evidence must be incorporated into the RFC and, by extension, the

3   dispositive hypothetical question posed to the Vocational Expert.  Osenbrock v.

4   Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

5            **5.     ALJ's Decision Is Not Supported By Substantial Evidence**

6            Here, the ALJ erred at step two by failing to consider any evidence of

7   Plaintiff's COPD when determining that Plaintiff had no severe physical

8   impairments.  See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001)

9   (holding an ALJ cannot selectively rely on some entries in plaintiff's records while

10  ignoring others).  Moreover, when the ALJ considered some evidence relating to

11  another of Plaintiff's pulmonary limitations, her asthma, he failed to consider or

12  discuss other evidence suggesting that Plaintiff's pulmonary limitations were

13  greater than he found.

14           For example, when finding that Plaintiff's asthma was not a severe

15  impairment at step two, the ALJ observed that "[a]t times, [Plaintiff] reported to

16  the emergency room for acute exacerbation of asthma [citing Tr. 285]."  Tr. 13.  A

17  review of the record cited by the ALJ at Tr. 285, however, reveals that in addition

18  to receiving a diagnosis of acute exacerbation of asthma, Plaintiff was also

19  diagnosed with acute exacerbation of COPD, acute respiratory failure, pulmonary

20  edema, and pneumonia, and that she was admitted to the ICU, sedated, placed on a

21  ventilator, and an endotracheal tube was administered.  Tr. 282-85, 286-89.  The

22  record further indicates that Plaintiff presented with "[p]atchy bilateral air space

23  opacities," and "pink tinged secretions[,]" that "EMS placed [Plaintiff] on CPAP

24  in route to [the] hospital with minimal improvement[,]" that Plaintiff reportedly

25  "had cough and cold symptoms for the last 3-4 weeks" before reporting to the

26  emergency department, and that the day before going to the emergency

27  department, Plaintiff "became increasingly short of breath and . . . had increased

28  cough for the last two days with yellow phlegm."  Tr. 282-84, 286-88.

                                            10

Critically, Plaintiff's hospital records indicate that she was admitted for over one month, from May 2, 2015, through at least June 4, 2015 after Plaintiff "reported to the emergency room" as the ALJ observed.  Tr. 20; <u>see</u>, e.g., Tr. 297-408.  Moreover, a close inspection of the over-one-hundred-pages of medical records relating to Plaintiff's more than one-month-long hospital admission reveals that Plaintiff had multiple serious complications that stemmed from her pulmonary issues.

For example, fifteen days after being admitted to the hospital, on May 17, 2015, Plaintiff "underwent a bronchoscopy and thick mucous plugs were removed[,]" she reportedly "had some erythema of the bronchial mucosa[,]" and she was "still intubated and sedated, and [she] failed a CPAP trial."  Tr. 290.  Records from the following day, on May 18, 2015, indicate that Plaintiff had remained intubated since being admitted to the hospital sixteen days earlier, that "multiple trials of extubation had been carried out, but [were] unsuccessful[,]" that a "[t]racheostomy was requested" at that time, and that Plaintiff had "[v]entilator dependence" because of "respiratory failure."  Tr. 292.  Plaintiff eventually developed bilateral pneumonia and sepsis, Tr. 293, and, on May 21, 2015, Plaintiff received a tracheostomy, Tr. 295-96.  On May 24, 2015, Plaintiff was noted to have "[r]espiratory failure now with tracheostomy" and her doctors noted that her COPD was contributing to this failure.  Tr. 374.

Plaintiff's medical records contain several examples along with discussions of her over-one-month-long hospitalization and include notations of:

- respiratory failure, sepsis, "bilateral wheezes[,]" and "[l]ungs-crackles";
- "underlying [COPD] now with increasing bilateral pneumonia" and "acute respiratory failure due to pneumonia and [COPD] exacerbation";
- continued intubation, sedation, and placement on a ventilator;
- "IV antibiotics" to treat her sepsis and tracheal infections; and

11

- chest x-ray findings with "no improvement[,]" "probable worsening in bilateral acinar patter[,]" and "bilateral infiltrates."

See, e.g., Tr. 297-408.

The ALJ, however, failed to consider or discuss any of this evidence and, instead, observed only one page in this record relating to Plaintiff's lengthy hospital stay for the proposition that "[a]t times, [Plaintiff] reported to the emergency room for acute exacerbation of asthma [citing Tr. 285]." Tr. 13.

Accordingly, because the ALJ failed to consider or discuss any of the evidence relating to Plaintiff's COPD related impairments when finding that Plaintiff had no physical limitations whatsoever, the Court finds that the ALJ's step two finding is not supported by substantial evidence in the record.

Moreover, the ALJ's failure to consider evidence of Plaintiff's COPD undercuts the ALJ's RFC finding because the relevant medical evidence the ALJ ignored suggests that Plaintiff had pulmonary limitations that would affect her ability to perform SGA. See SSR 96-8p. Consequently, the ALJ's step five finding was also unsupported by substantial evidence in the record because the hypothetical questions posed to the VE at the hearing—the answers of which the ALJ based his step five finding on—were based on the ALJ's unsupported RFC assessment. See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) ("An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations.").

The Court, however, cannot determine on the record before it whether Plaintiff is indeed disabled as a result of her COPD. As such, remand for further proceedings is appropriate here so that the ALJ may consider and discuss:

- the extensive medical evidence relating to Plaintiff's COPD and pulmonary limitations;
- whether Plaintiff's COPD is a severe impairment at step two;

- whether Plaintiff's COPD warrants additional limitations in Plaintiff's RFC assessment; and
- whether Plaintiff can perform SGA at step five.

Because the Court remands as to the aforementioned issue, it does not address Plaintiff's remaining assignment of error.

## IV.   CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED:  03/01/2021

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge